Jake D. Finkel, Esq. (SBN 293954)
Donel R. Lopez, Esq. (SBN 323744)
**THE FINKEL FIRM**
3470 Wilshire Blvd., Suite 830
Los Angeles, CA 90010
Tel: (213) 787-7411
Fax: (323) 916-0521
jake@finkelfirm.com
donel@finkelfirm.com

Attorneys for Plaintiff,
ANTHONY L. MILLS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY L. MILLS;<br><br>        Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF VETERAN AFFAIRS,<br><br>        Defendant. | Case No.: **2:23-cv-04075**<br><br>**PLAINTIFF's COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) VIOLATION OF SECTION 501 OF THE REHABILITATION ACT 29 U.S. C. § 791, ET SEQ.;**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ANTHONY L. MILLS alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

1.   This is an action by Plaintiff ANTHONY L. MILLS ("Plaintiff"), whose employment with Defendant DEPARTMENT OF VETERAN AFFAIRS. ("Defendant" or "VA"), was wrongfully terminated in violation of Section 501 of the Rehabilitation Act 29 U.S. C. § 791, et seq.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 501 of the Rehabilitation Act 29 U.S. C. § 791, et seq.

3.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the

events or omissions giving rise to this action, including the unlawful employment actions alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

4.   Plaintiff files this action pursuant to 29 C.F.R. §1614.407(b), and has met the prerequisites for filing pursuant to 29 C.F.R. §1614.407(b).

5.   Prior to the filing of this Complaint, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of his disability. Plaintiff's EEOC Charge arises out of many of the same facts alleged herein that pertain to his claims.

6.   Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

7.   *Plaintiff*: Plaintiff is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

8.   *Defendant:*  Defendant VA is, and at all times mentioned in this Complaint was, a federal agency.  Defendant's place of business, where the following causes of action took place, was and is in the VA Long Beach Healthcare System located at 5901 E. 7th Street, Long Beach, California, 90822.

## FACTS COMMON TO ALL CAUSES OF ACTION

*Plaintiff's Hiring:*

9.   In April 2018, Plaintiff was hired as an EMS Tech by Defendant at the VA Long Beach Healthcare System located at 5901 E. 7th Street, Long Beach, California, 90822 ("Hospital"). Plaintiff's duties included but were not limited to: cleaning, sanitizing, and maintaining rooms and hallways at the Hospital.

10.   Throughout his employment, Plaintiff performed consistently and met company expectations.

*Plaintiff's Protected Status and Activity:*

11.   Plaintiff has meniscus tears in both knees.

12.   Plaintiff has ligament damage in his left shoulder.

13.   Plaintiff has ligament injuries in his right knee.

14.   Plaintiff has ligament damages in lower back.

PLAINTIFF'S COMPLAINT FOR DAMAGES

*Defendants' Adverse Employment Actions And Behavior:*

15.   In or around October 2019, Plaintiff was placed on work restrictions by his physician. The restrictions were permanent and included: no lifting more than twenty-five (25) pounds and no standing for more than 25-30 minutes on his feet due to his knee, left shoulder and lower back injuries.

16.   Soon thereafter, in October 2019, Plaintiff provided his work restrictions/doctor's note to Defendant VA's Human Resources Representative, Norman Lafue ("Norman").

17.   Though Defendant VA was obligated to engage in the interactive process and provide reasonable accommodations, they failed to do so.  Plaintiff had weekly meetings, for over a year, with Defendant VA's Human Resource Coordinator, Ely Quesenberry ("Ely") where Plaintiff would provide doctor's notes regarding his injuries. Moreover, Ely provided Plaintiff with a list of open positions at the Hospital, and Plaintiff would select the positions from this list that he could perform with his restrictions. These open positions included, but were not limited to, Program Support Analyst and other sedentary jobs. Each time, Ely responded by informing Plaintiff that "it would not be an issue" finding Plaintiff a position, particularly given Plaintiff's credentials. But, Defendant VA never provided any alternate positions to Plaintiff. In fact, at one point Ely stated that the list Plaintiff was reviewing was invalid because none of the open positions constituted a lateral position transfer.

18.   Throughout 2020, due to Defendant VA's failure to accommodate his injuries, Plaintiff would apply for positions on Defendant's website (usajobs.gov). Upon applying, Defendant VA's recruiting staff informed Plaintiff he was selected and qualified for his selected position. Despite Defendant VA's recruiting staff's affirmations that Plaintiff had been selected and was qualified for alternate positions, Plaintiff was never reassigned to these new positions. Instead, Ely would deny Plaintiff's selection and again inform him that the positions he had applied for were not lateral transfer and were impermissible because they would result in a pay increase for Plaintiff.

19.   As a result of Defendant VA's failure to accommodate, throughout 2020 Plaintiff was required to work in the same position he had always been working as an EMS Technician. Though Plaintiff attempted to work with his restrictions, his work as an EMS Technician only aggravated his injuries. When Plaintiff complained about his injuries to his supervisor, Gregory Brown ("Gregory"), Gregory would simply request that Plaintiff's physician adjust Plaintiff's work restrictions. More

troublingly, Plaintiff would be sent home as he could not physically complete his assigned tasks.

20.   In or around October 2020, Ely informed Plaintiff that the list of jobs Ely previously provided to Plaintiff was obsolete and had been obsolete for the entire year. As a result, Plaintiff discovered that the jobs that he had proposed to Defendant VA and Ely were, in fact, not open positions.

21.   In or around October 2020, Plaintiff attended an introductory speech meeting with Defendant VA's Chief of EMS Charity Tisdale ("Charity"). During the meeting, Charity stated that her goal was to "clear out the department from the jetlag" caused by those who have disabilities and to eliminate "those that are disabled."

22.   In or around December 2020, Ely and Plaintiff's Reasonable Accommodation Coordinator Edward Mason ("Mason"), wanted to close Plaintiff's request for reasonable accommodations. Plaintiff objected and argued that Defendant VA had not accommodated him for a whole year and had not engaged in good faith in the interactive process, as the list he was working off to obtain an alternat position was obsolete.

23.   In or around March 2021, Plaintiff received an email stating his case had indeed been closed and that Defendant VA was no longer required to accommodate him.

24.   In or around March 2021, Plaintiff filed Charge of Discrimination with the EEO. Ultimately, Plaintiff was offered a position as a Program Support Assistant and that he would start that position between thirty (30) and sixty (60) days.

25.   In or around April/May 2021, when the sixty (60) day deadline to begin his position as Program Support Assistant was approaching, Plaintiff reached out to Ely and Edward via email and requested his start date in order to coordinate his schedule with his upcoming doctor's appointments and physical therapy sessions. But, Plaintiff was never assigned the position he was offered at the EEO meeting nor did he receive a response to his inquiry.

26.   In or around July 2021, Plaintiff was told his requests for accommodation were closed and the Program Support Assistant position was no longer available. Accordingly, Defendant VA would require that Plaintiff remain as a EMS technician.

27.   In or around July 2021, Plaintiff filed a second Charge of Discrimination with the EEO.

PLAINTIFF'S COMPLAINT FOR DAMAGES

28.    In or around November of 2021, in retaliation for requesting reasonable accommodations and opening a second claim with the EEO, Gregory made a false police report that Plaintiff had physically threatened a co-worker, Kendall Morgan ("Kendall"). Upon the police arriving at the Hospital, Plaintiff's coworker Kendall  confirmed that Plaintiff had not threatened him. Another coworker, Paul Cruz ("Paul"), also confirmed with the police that Plaintiff had not threatened Kendall.

29.    From July 2021 until February 15, 2022, Plaintiff continued to work as an EMS Technician in violation of his work restrictions. In further retaliation for requesting accommodations and opening a second EEO Charge of Discrimination, Gregory would assign Plaintiff tasks that violated his work restrictions. Each time, Plaintiff would remind Gregory of his restrictions.

30.    In or about October 2021, Defendant VA required Plaintiff to conduct a fit for duty physical examination with Defendant VA's Dr. Berenji. Plaintiff requested that he seek a physical examination from his primary care physician. In response, Charity threatened Plaintiff that he would be terminated if he didn't go to Dr. Berenji. Plaintiff had never been required to conduct a physical examination during his employment. The examination only lasted approximately three (3) minutes. Dr. Berenji never sent Plaintiff for any XRays or MRIS and did not physically examine Plaintiff. At the end of the examination, Dr. Berenji issued a documented official medical examination report that stated Plaintiff could peform his job duties with the exception that Defendant honor and accommodate Plaintiff for his limitations.

31.    In or about November, Plaintiff filed another Complaint for Discrimination with the EEO, Defendant VA, and Office of Resolution Management ("ORM").

32.    On or about February 15, 2022, Gregory provided Plaintiff with a "Fitness for Duty Addendum" and "Physical Exam Results" document and informed Plaintiff to "get [your] things and leave [the Hospital] grounds." From February 15, 2022 until present, Defendant VA placed Plaintiff on FMLA / LWOP non-paid, non-duty status "pending administrative action." Despite making multiple requests to return to work, Plaintiff has not received a response from Defendant VA. Plaintiff has also never received any compensation during his alleged "FMLA/LWOP" leave.

33.     No official termination. What is our argument for the term date? February 15, 2022?

34.    To date, Plaintiff has not been provided a new position to return to work.

PLAINTIFF'S COMPLAINT FOR DAMAGES

35.   As a result of the harassment, discrimination and retaliation., Plaintiff has suffered emotional distress because of Defendants' malicious conduct toward him.

36.   As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

37.   As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

38.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

**FIRST CAUSE OF ACTION**

**Violation of Section 501 of the Rehabilitation Act 29 U.S. C. § 791, et seq.**

**Against All Defendants**

39.   The allegations set forth in paragraphs 1 through 16  are re-alleged and incorporated herein by reference.

40.   The Rehabilitation Act prohibits employment discrimination on the basis of disability. (29 U.S.C. §§ 791 et seq.) Section 501 of the Rehabilitation Act (29 U.S.C. § 791).) expressly invokes the substance of the Americans with Disabilities Act (the "ADA"). (*Id.* (incorporating 42 U.S.C. §§ 12111 et seq.).) Accordingly, the standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act.

41.   To state a prima facie case under 29 U.S.C. § 791 (a.k.a., "Section 501") of the Rehabilitation Act, a plaintiff must demonstrate that (1) they are a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of their disability. (*Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1003 n.1 (9th Cir. 2007); *Reynolds v. Brock*, 815 F.2d 571, 573-574 (9th Cir. 1987).) A plaintiff must demonstrate that their disability was a motivating factor behind the discrimination. (29 U.S.C. § 791(g).)

42.   Here, Plaintiff's actual, perceived, and/or history of disability and/or other characteristics were motivating factors in Defendants' decision to terminate Plaintiff's employment, not to retain, hire,

or otherwise employ Plaintiff in any position, to refuse to accommodate Plaintiff, to refuse to engage in the interactive process, and/or to take other adverse job actions against Plaintiff.

43. Defendants, through the conduct alleged above, committed unlawful employment practices, including by the following, separate bases for liability:

    a. Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics;

    b. Failing to accommodate Plaintiff's actual, perceived, and/or history of physical disability;

    c. Failing to engage in a timely, good faith interactive process to determine reasonable accommodation;

    d. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of physical disability;

    e. Retaliating against Plaintiff for seeking to exercise rights guaranteed under federal law and/or opposing Defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination;

    f. Failing to provide Plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against Plaintiff for taking leave in violation of federal law.

44. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

45. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

46. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees as a result of

Defendants' conduct.

## **PRAYER**

WHEREFORE, Plaintiff ANTHONY L. MILLS prays for judgment against Defendants as follows:

1.  For general and special damages according to proof;

2.  For exemplary damages, according to proof;

3.  For pre-judgment and post-judgment interest on all damages awarded;

4.  For reasonable attorneys' fees;

5.  For costs of suit incurred;

6.  For such other and further relief as the Court may deem just and proper.

ADDITIONALLY, Plaintiff demands trial of this matter by jury. (F.R.C.P. Rule No.38).


Dated:  May 25, 2023                    LAW OFFICES OF JAKE. D. FINKEL


                                        By: _____
                                            JAKE D. FINKEL, ESQ.

                                            DONEL R. LOPEZ, ESQ.

                                            Attorneys for Plaintiff,
                                            ANTHONY L. MILLS